# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Epson America, Inc., | ) Civil Action No. 0:17-cv-00129-CMC |
| Plaintiff, | ) |
| vs. | ) **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AND RECALL ORDER** |
| USA111, Inc. d/b/a iRULU, | ) |
| Defendant. | ) |

Plaintiff Epson America, Inc. ("Epson") respectfully submits this Memorandum of Law in Support of its Motion for a Preliminary Injunction and Recall Order that seeks to prohibit Defendant USA111, Inc. d/b/a iRULU ("Defendant" or "iRULU") from further engaging in unlawful false advertising.

## INTRODUCTION

iRULU has engaged in an ongoing campaign to purposefully deceive the public by grossly overstating the brightness of its projectors. Through independent testing, Epson has conclusively established that iRULU's BL20 projector, which it advertised as producing 2600 lumens, actually only produces 80 lumens. Further, due to the projector's design and components, it could never be capable of producing the advertised lumens. Although both consumers and Epson have made iRULU aware of its grossly inaccurate lumen claims, iRULU refuses to remove its literally false advertisements from the marketplace and instead, continues to create confusion in the marketplace. Blatantly false advertising of this magnitude calls for swift injunctive relief to protect consumers and to promote fair competition in the projector marketplace.

Epson therefore seeks a preliminary injunction: (1) prohibiting iRULU from engaging in further false or misleading advertising with respect to its products' lumen capacities; (2) ordering immediate recall of all infringing iRULU products from Amazon and other webpages until such a time as iRULU can substantiate its new proposed lumen claims through appropriate testing; and (3) ordering iRULU to send corrective notice to its retailers and customers disclosing that it made literally false claims regarding its products' lumen capacity.

## FACTS

The facts set forth in this section are supported by the Verified Complaint (ECF No. 1) ("Compl.") and Exhibits A and B hereto.

### A.   Portable Consumer Projectors

While traditionally associated with movie theaters, projectors have become an increasingly common video display product for consumers used in home, business, and educational settings. Ex. A, ¶ 3. Today, consumers use digital projectors in the same way as television or computer screens. Digital projectors receive video signals from external devices, such as DVD players or computers, and "project" those signals onto a screen. Ex. A, ¶ 4. Consumers can purchase projectors in a variety of sizes ranging from the size of a cell phone to larger, permanently-mounted projectors for home theaters. Ex. A, ¶ 5. Within a particular projector category, such as portable consumer projectors, the quality and corresponding price of a specific projector is largely determined by its resolution and brightness. Ex. A, ¶ 5. Projector brightness is typically measured and described in lumens. Ex. A, ¶ 6. The brighter the projector, the higher the lumen rating, and, all else being equal, the more it will likely cost. Ex. A, ¶ 6.

The lumen rating for a projector is one of the most important and immediately recognizable projector features for consumers and one that necessarily impacts consumer choice.

Ex. A, ¶ 7. For this reason, lumen ratings are used to create sub-groups of portable consumer projectors, and serve as a measuring stick for consumers to compare projectors. Ex. A, ¶ 7. Due to the importance of a projector's brightness levels, manufacturers prominently display and advertise a projector's lumen rating on its packaging and advertising. Ex. A, ¶ 8. In the case of online marketplaces, sellers list a projector's lumen rating in the product description, title, and even in the product name. Ex. A, ¶ 8. Beyond name and description, projector popularity, as measured by sales volume in a particular category, is a very important consumer metric that largely influences choice. Ex. A, ¶ 9. Numerous online marketplaces, including Amazon.com, identify best-selling products or "best sellers" with a special label. Ex. A, ¶ 10. When choosing a projector in a given category, consumers are more likely to purchase a projector with a "best seller" label than one without such a label. Ex. A, ¶ 9. For this reason, identifying best selling products in online marketplaces has significant value for manufacturers. Ex. A, ¶ 11.

  **B.** **<u>Epson Projectors</u>**

Epson is recognized throughout the world and the United States as a leading projector manufacturer. Compl. ¶ 15. As a market leader, Epson continues to set standards for image quality, performance, and innovation with its line of multimedia projectors. Compl. ¶ 16. Epson's commitment to delivering quality products is recognized by the industry through various product awards and industry recognition. Compl. ¶ 16. Epson has spent millions of dollars and significant time and effort in advertising, promoting, and developing its brand and establishing substantial goodwill in the portable consumer projector market. Ex. A, ¶ 12. Epson prides itself on achieving the highest customer satisfaction ratings, accomplished in large part by using the most precise testing equipment and procedures available to ensure accurate product descriptions and specifications. Compl. ¶ 17. In addition, Epson's projector service and support is industry-

leading. Compl. ¶ 18. Epson offers its projectors with a two-year standard limited warranty, including Epson's Road Service, which provides a replacement projector with next day delivery and free shipping. Compl. ¶ 18.

### C.     iRULU's False Advertising of Its Projectors

#### 1.     *iRULU Projectors*

iRULU is a direct competitor of Epson in the portable consumer projector market. Compl. ¶ 19. iRULU sells and offers for sale projectors to consumers throughout the United States on various online commerce sites including Amazon.com and irulu.com. Compl. ¶ 19. iRULU lists approximately 31 projectors with advertised lumen outputs in the 800 to 2800 range. *See* Compl. ¶ 29 & Compl., Ex. 2. The majority of these projectors include iRULU's advertised lumen output right in the product name. *See* Compl., Ex. 2. The iRULU BL20 is iRULU's top selling projector. Compl. ¶ 20. Amazon has granted the iRULU BL20 projector an Amazon "Best Seller" tag based upon its sales. Compl. ¶¶ 21-22. Given this "Best Seller" rating, iRULU's BL20 projector gains favorable placement on organic Amazon searches for projectors. Compl. ¶ 22.

#### 2.     *Independent Testing*

Epson commissioned Lumita, Inc. ("Lumita"), an independent technology consulting company that specializes in product testing involving light and color measurement, to test the actual brightness of selected iRULU projectors. Ex. B, ¶ 6. Lumita tested three different BL20 units, each of which iRULU represents as having a 2600 lumen rating. Ex. B, ¶ 7. The results showed that each projector actually had an 80 lumen output (for white and color light), which is less than 96 percent of iRULU's advertised rating. Ex. B, ¶ 10. Accordingly, the BL20's actual light output is materially smaller than the 2600 lumens iRULU represents to consumers in its

4

advertising and product description.

The architecture of the iRULU BL20 projector, one of its highest rated lumen output projectors, is not capable of achieving light outputs even remotely close to the values iRULU represents to consumers. Ex. B, ¶¶ 16-17. Nor would it be possible to modify the BL20 projector to make it capable of significantly higher light outputs. Ex. B, ¶ 18. All of the iRULU LCD LED projectors listed on Amazon are identified as having a similar optical architecture to the BL20. Ex. B, ¶ 20. As a result, it is nearly certain that iRULU significantly misrepresents the brightness of most if not all of its projectors to consumers where the majority of iRULU's projectors have advertised brightness ratings of between 800 and 2800 lumens. Ex. B, ¶ 20.

### 3.     *iRULU Deceives Consumers*

Beyond the independent testing, which conclusively establishes that iRULU's lumen representations are literally false, iRULU projector purchasers throughout the United States have voiced serious concerns regarding iRULU's projector brightness representations, in many cases calling iRULU's claims wholly false and unsupported. Compl. ¶¶ 24-25 & Compl., Ex. 1. For example, customer feedback for iRULU projectors on Amazon.com contains, *inter alia*, the following comments:

- "I bought this projector out of sheer curiosity, given the extraordinarily high claimed brightness of 2600 lumens, and the low price. As an engineer with familiarity with projection technologies, this seemed an extremely unlikely claim. Upon receiving it, the first thing I did was plug it in and take a true lumens output measurement in the optical lab I have access to. The result: the iRulu BL20 was outputting less than 200 lumens in reality vs. the claimed 2600 lumens! This makes it really only suitable for very very dark rooms. Add on top of this that the title is very misleading in claiming "1080P" support. If you dig down in the specs, it does list that the native resolution is 800 x 480, which is the true resolution you will see. In theory the projector could accept 1080p resolution input (ie. 1920 x 1080) and downsample it to 800 x 480, but you are then getting absolutely no benefit from 1080p content. And in fact

5

my computer did not even detect that the project would allow 1080p input, making even that misleading claim false."[1]

- "This projector isn't close to the advertised 2600 lumens. Freaking ridiculous claim. Fine projector for the price but iRulu is pretending that this product is something that it's absolutely not. This is much closer to 70 or 90 lumens than 2600."

- "Project[or] brightness is less than expected and image quality as well[.] I bought an [A]cer about 5 to 6 years ago with less lumens (2200) [compared to advertised 2600 lumens] and quality that picture was much brighter and clearer - disappointed in this machine - I would love to send back - but lost the paper work [.] This should of been a lot better but was not good as a paper weight."

- "I'm in a college dorm room and I thought a cheap projector for movies would be great a space efficient and that this would be perfect with an advertised 2600 lumens and 1080p. I was wrong. No[t] only does it have to be completely and absolutely dark, but at a distance of roughly 8 feet, the picture is already pixilated. Also it is difficult to focus the whole screen unless the projector is completely square with the viewing surface. My friend a few doors down has a Epson projector (unsure which one) that only has 2000 lumen and it seems way brighter and way clearer than this one. Will definitely be returning soon and will not spend money on cheap, falsely advertised China junk. You get what you pay for."

- "I do not understand the lumens on this product as 200 lumens is brighter than this product. I know this because I purchased a ZTE Pro2 which has 200 lumens."

- "Lets see where to start.. how about the product description. IRulu - name, ok. BL20 model. Ok. 1080P - HAHA - WRONG. 3D - WOW - WRONG. 2600 LUMENS - SO SO SO WRONG."

- "This was a waste of time. Though it claims 2600 lumens, it was no where near it. I displayed slides on same screen, side by side, with my Dell Projector (3200 lumens) and it wasn't close at all. In fact, the image displayed was nearly b/w."

- "Returning it. It's cheap china made junk. Pretty much bait and switch, most people won't know but this is not 2600 lumens, no way it is, it must be pitch black, plus it's focus sucks, and it's not sharp, no way it's 1080p.

---

[1] This review was discovered after the filing of the Complaint and is not included in Exhibit A thereto. It can be found at: https://www.amazon.com/gp/customer-reviews/R3UVJ095YP44WA/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B01EAB9A28 (last accessed Jan. 19, 2017).

6

>Ha Ha. But if you have 165$ for a simple backyard bonfire, you can really stoke it well with this."

Compl. ¶ 25 & Compl., Ex. 1.

Purchasers of iRULU's projectors are likely to be and actually have been, misled and deceived by iRULU's product labels, descriptions, names, and advertisements. Compl. ¶ 34. Consumers expect the represented brightness specifications to be accurate for iRULU projectors, as they base their purchasing decisions in large part on these representations. Compl. ¶ 34. In fact, consumers that purchase iRULU projectors receive projectors with drastically lower brightness outputs than those represented and advertised by iRULU. Compl. ¶ 27; Ex. B, ¶¶ 18-19.

### 4.     *iRULU's False Advertising Harms Epson*

iRULU's false and misleading product labels, descriptions, and advertisements are damaging to Epson's reputation and goodwill and are also damaging to the consuming public. Compl. ¶ 35. These false and misleading representations are designed to entice consumers to purchase iRULU projectors over Epson's products. Compl. ¶ 35. Specifically, iRULU's false representations regarding the lumen outputs for its projectors suggest that consumers can purchase iRULU projectors with comparable brightness levels to Epson projectors, when actually, these iRULU projectors have materially lower brightness levels. Compl. ¶ 27; Ex. B, ¶¶ 18-19.

Furthermore, due to iRULU's literally false advertising, its sales have been artificially inflated. These inflated sales have resulted in iRULU's BL20 projector receiving Amazon's "Best Seller" banner. Compl. ¶ 36. This "Best Seller" banner results in iRULU's projector receiving special promotion and visibility on Amazon. Compl. ¶ 36. Indeed, due to this improperly granted "Best Seller" banner, iRULU projectors are the first result when one searches

for the term "projector" on Amazon. Compl. ¶ 36; Ex. A, ¶¶ 10-11. This improperly achieved promotion of iRULU projectors comes to the detriment of Epson and its promotion and sale of its projectors. Compl. ¶ 36; Ex. A, ¶¶ 17-18.

The natural, probable, and foreseeable result of iRULU's wrongful conduct has been to cause confusion, deception, and mistake in the portable consumer projector market as a whole, to deprive Epson of business and goodwill, and to injure Epson's relationship with existing and prospective customers. Compl. ¶ 37. Epson is informed and believes that iRULU's wrongful conduct has resulted in increased sales of iRULU projectors while hindering the sales of Epson's projectors, as well as its ability to properly promote and advertise its products. Compl. ¶ 38; Ex. A, ¶¶ 16-17. Epson has sustained and will continue to sustain irreparable damages as a result of iRULU's wrongful conduct, unless enjoined. Compl. ¶ 38; Ex. A, ¶ 18.

### 5.  *iRULU Refuses To Cease Its False Advertising*

In an effort to remove this blatantly false advertising from the marketplace, Epson sent iRULU a letter demanding that iRULU discontinue its false advertising regarding lumens. In response to Epson's letter, iRULU stated that "[b]efore we launch [sic] this projector, our OEM factory provided us a professional and authoritative test report for brightness by a third party testing company and the test result stated that the brightness of the projector is about 3800lumens [sic], not less than 2600 lumens.(Test [sic] report can be provided if needed)." Compl. ¶ 31. Epson asked that the test results be provided, as was offered by iRULU in its response to Epson's letter. Compl. ¶ 32. iRULU failed to produce any test results, let alone any to substantiate its claims that its projectors actually emit 800 to 2600 lumens, as it represents to consumers. Compl. ¶ 33. iRULU continues to engage in its false advertising, despite being on specific notice of the falsity of its statements.

**ARGUMENT**

In order to obtain a preliminary injunction, a plaintiff must show:

(1) likelihood he will succeed on the merits;

(2) likelihood he will suffer irreparable harm in the absence of a preliminary injunction;

(3) that the balance of equities tips in his favor; and

(4) that the injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Occupy Columbia v. Haley*, 866 F. Supp. 2d 545, 552 (D.S.C. 2011); *Klockner-Humboldt-Deutz Aktiengesellschaft, Koln v. Hewitt-Robins Div. of Litton Sys., Inc.*, 486 F. Supp. 283, 287 (D.S.C. 1978) (granting preliminary injunction on false advertising claim); *see also Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, No. 116CV592JCCMSN, 2016 WL 3348431, at *13 (E.D. Va. June 15, 2016) (granting a preliminary injunction on false advertising claim); *Scotts Co. v. Pursell Indus., Inc.*, No. 3:02CV240, 2002 WL 34528439, at *4 (E.D. Va. July 2, 2002) (granting a preliminary injunction on false advertising claim).

## I.     EPSON IS LIKELY TO SUCCEED ON ITS CLAIMS

The first question is whether Epson is likely to succeed on the merits. *Winter*, 555 U.S. at 20. Epson need not establish "actual success"—only a "likelihood of success" at trial. *Amoco Production Co. v. Gambell*, 480 U.S. 531, 546 n.12 (1987); *accord Parents' League for Effective Autism Servs. v. Jones-Kelley*, 339 F. App'x 542, 547 (6th Cir. 2009) ("At this stage of the litigation, we are not deciding that plaintiffs will succeed in showing a violation of their rights . . . but only [whether the plaintiff was entitled to] preliminary injunctive relief."); *Caballo Coal Co. v. Indiana Michigan Power Co.*, 305 F.3d 796, 802 (8th Cir. 2002) ("It is important to note

that in this instance, as in any preliminary injunction analysis, the court does not predetermine the merits of the case.").

### A.    Epson's False Advertisement Claim Is Likely To Succeed On The Merits[2]

The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B); *see PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011). In order to assert a false advertising claim under the Lanham Act, a plaintiff must establish that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product;
>
> (2) the misrepresentation is material, in that it is likely to influence the purchasing decision;
>
> (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;
>
> (4) the defendant placed the false or misleading statement in interstate commerce; and
>
> (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Id.* (quoting *Scotts Co. v. United Industries*, 315 F.3d 264, 272 (4th Cir. 2002)).

Epson satisfies all of these elements.

---

[2] The likelihood of success of Epson's Lanham Act (false advertising) claim (Count I) will determine the likelihood of success of its state law claim (Count II), because the elements and proof required are identical for both claims. *See e.g., Muhler Co. v. Window World of N. Charleston LLC*, No. 11-00851, 2014 WL 4269078, at *4 n. (D.S.C. Aug. 28, 2014) ("[The defendant] is also liable under [the plaintiff's] cause of action for common law unfair trade practice, as that cause of action shares common elements with the Lanham Act."). Accordingly, for purposes of this Motion, there is no need to examine Epson's state law claim independently.

### 1. *iRULU Has Made Literally False Statements Regarding Characteristics Of Its Projectors*

In a false advertising action under the Lanham Act, "the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." *PBM Prod.*, 639 F.3d at 120 (quoting *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997)). "In analyzing whether an advertisement . . . is literally false, a court must determine, first, the unambiguous claims made by the advertisement . . . and second, whether those claims are false." *Id.* (citations and internal quotations marks omitted).

Here, iRULU has grossly misrepresented the lumen outputs of its projectors; a factual, measurable characteristic. Independent testing by Lumita, a firm specializing in light measurement, shows that iRULU's BL20 produces no greater than 80 lumens, a value materially less than the 2600 lumen value represented by iRULU. *See* Ex. B, ¶ 10. Thus, Epson has demonstrated through credible, expert evidence that iRULU's claims regarding the BL20 are unambiguous and literally false. Further, Epson can establish that iRULU's literally false representations are not limited to iRULU's BL20 projector. As Epson's expert explained, the iRULU BL20 projector's inefficient design renders it incapable of producing significantly more than 80 lumens of Light Output. Ex. B, ¶¶ 17-18. All of the iRULU LCD LED projectors listed on Amazon, including projectors in the 800 to 2800 lumen range, are identified as having a design similar to the BL20. Ex. B, ¶ 20. Given that the design of those projectors is the same as the iRULU BL20, those projectors are similarly incapable of producing more than 80 lumens of light output. Ex. B, ¶ 21. This is sufficient at this stage of the proceedings, when the Court's only inquiry is whether there is a likelihood of success on the merits.

### 2. *Because iRULU's Claims Are Literally False, Epson Is Not Required to Establish Consumer Deception*

Having demonstrated that iRULU has made literally false representations of fact that influence consumer purchasing, Epson need not demonstrate actual consumer deception in order to obtain injunctive relief. *See C.B. Fleet Co.,* 131 F.3d at 434 ("If the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public."); *In re GNC Corp.,* 789 F.3d 505, 514 (4th Cir. 2015) ("[A] plaintiff arguing literal falsity need not produce such evidence. If a representation is false, we assume as a matter of law that it is also misleading."); *see also McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991) (where advertisement is literally false, "the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public") (internal quotations omitted); *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 33 (1st Cir. 2000) ("If the advertisement is literally false, the court may grant relief without considering evidence of consumer reaction.").

Even though it is not required, Epson can easily demonstrate consumer confusion with regards to iRULU's literally false lumen claims. Even a cursory review of the negative Amazon.com customer feedback quickly and conclusively demonstrates that consumers are being duped into purchasing these projectors based upon iRULU's false claims. *See* Compl. ¶¶ 24- 25 & Compl., Ex. 1.

### 3. *iRULU's False Statements Are Material*

Projector brightness is a material characteristic, as consumers readily identify projectors based upon this measurement. It is one of the most important characteristics informing consumer choice when selecting a portable projector. Compl. ¶ 34. For this reason, manufacturers prominently display the brightness in lumens for projectors in product

descriptions, labels, names, and advertising. Ex. A, ¶ 8. Indeed, iRULU frequently places the product's lumens rating in the title of its Amazon page. *See, e.g.*, Compl. ¶ 21 & Compl., Ex. 2.

In representing projector lumen outputs that are significantly higher than actual outputs, iRULU literally misrepresents material factual information to consumers. As an indication of the importance of lumen outputs to consumers, iRULU has included advertised lumen ratings directly in its product names for the majority of its portable consumer projectors. *See* Compl. ¶ 21 & Compl., Ex. 2. As a further indication of the importance of brightness to consumers, similar projectors on Amazon.com are compared by lumen output and searchable by "Video Projector Image Brightness," which lists several different lumen ranges:



Lastly, the negative feedback left by consumers concerning iRULU's false lumen claims again demonstrates that lumens are a quality in projectors that consumers deem important. *See* Compl. ¶¶ 24-25 & Compl., Ex. 1.  iRULU's false lumen claims were so important to these duped consumers that they took the time to log into their Amazon accounts and write negative reviews warning other consumers of iRULU's false lumen claims.  Given all of the above, there is no doubt that statements regarding lumens are material to purchasers of projectors.

### 4.     *iRULU's Claims Were Made In Interstate Commerce*

The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127; *see also Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003) ("commerce" under the Lanham Act is coterminous with the commerce that Congress may regulate under the Commerce Clause of the United States Constitution).  Indeed, courts have had little trouble considering the internet an "instrumentality of interstate commerce." *AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 512 (W.D. Va. 2013); *Verisign, Inc. v. XYZ.com, LLC*, 2015 WL 7430016, at *4 (E.D. Va. Nov. 20, 2015).  It is undisputed that in selling and advertising its projectors to consumers throughout the United States through various online marketplaces including Amazon.com and irulu.com, iRULU's false representations have been made in interstate commerce, thus satisfying the fourth element of a the Lanham Act analysis.

### 5.     *Epson Has Been And Will Continue To Be Injured By iRULU's False Advertisements*

To satisfy the final element of a false advertising claim under the Lanham Act, Epson must show that it has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.  *See PBM Prod.*, 639 F.3d at 120.  This element of a Lanham Act claim necessarily overlaps with the

14

irreparable harm analysis, and is thus addressed in the following section.

## II. EPSON WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION

The plaintiff must "make a clear showing that it is likely to be irreparably harmed absent preliminary relief." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009), *v*acated on other grounds, Citizens United v. FEC*, 558 U.S. 310 (2010), *aff'd, The Real Truth About Obama, Inc. v FEC*, 607 F.3d 355 (4th Cir. 2010). "[G]enerally irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *MultiChannel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994). "When the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Id.* at 552. Because claims under the Lanham Act involve injury to reputation and goodwill, the Fourth Circuit recognizes that it is almost impossible to prove the extent of harm. *See PBM Prod.*, 639 F. 3d at 126 ("It is virtually impossible to prove that so much of one's sales will be lost or that one's goodwill will be damaged as a direct result of a competitor's advertisement.") (citation omitted); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) ("Infringement gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is substantial likelihood of confusion of the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff.") (internal quotation marks and citation omitted).

For this reason, the Fourth Circuit has made clear that the irreparable harm element is satisfied and injunctive relief is proper when a plaintiff "suffers from irreparable harm based primarily on the fact that [defendant's] advertising misled customers." *See PBM Prod.,* 639 F.3d at 126; *see also Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 861

(E.D. Va. 1988) ("[T]the irreparable harm prong can be satisfied upon a demonstration that the competitor's advertising tends to mislead consumers."). Further, a Lanham Act plaintiff can demonstrate irreparable harm through lost sales in order to obtain an injunction "even if most of [the] sales decline is attributable to factors other than the competitor's false advertising." *See PBM Prod.*, 639 F.3d at 126, 127 (citing *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 316 (2d Cir. 1982)).

Epson has satisfied the Fourth Circuit's test for demonstrating irreparable harm as absent injunctive relief, Epson has no means to prevent iRULU from "infecting the marketplace" with false statements. *See PBM Prod.*, 639 F.3d at 127. Indeed, it is undisputed that iRULU competes directly with Epson in the portable consumer projector market. While literally false statements regarding material product characteristics are misleading as a matter of law, feedback unequivocally shows that iRULU's false statements regarding its projectors' brightness levels have misled consumers into purchasing its projectors rather than Epson's projectors. *See* Compl. ¶¶ 24-25 & Compl., Ex. 1; *PBM Prod.*, 639 F.3d at 126. This proof of consumer deception alone is sufficient for a showing of irreparable harm. *See PBM Prod.,* 639 F. 3d at 126 (holding irreparable harm element satisfied "primarily on the fact that [defendant's] advertising misled customers.").

Further, Epson has set forth evidence that its sales have declined. In fact, since iRULU began selling its BL20 projectors on Amazon.com in November of 2015, swiftly capturing up to 24% of the market due to its false advertising tactics, Epson estimates that it has lost approximately $16 million in projector sales. Ex. A, ¶¶ 16-17. This evidence alone is also sufficient to satisfy the irreparable harm element. *PBM Prod.*, 639 F.3d at 126, 127. Lastly, through its false advertising, iRULU has been able to obtain Amazon's "best seller"

identification for its projectors, which has tremendous value on Amazon.com and other online marketplaces. Compl. ¶ 21; Ex. A, ¶ 11. As a result, iRULU and Epson are not competing on even advertising grounds due to iRULU improperly obtaining the Amazon "best seller" identification tag through its false advertising of lumen levels. Any one of these pieces of evidence alone would be sufficient for a finding of irreparable harm; taken together, the evidence of irreparable harm is overwhelming.

## III.   THE BALANCE OF EQUITIES FAVORS EPSON; A PRELIMINARY INJUNCTION WOULD NOT UNDULY HARM IRULU

The third injunctive element, the balance of equities, tilts heavily in favor of Epson. As shown, Epson has invested millions of dollars and significant time and effort in advertising, promoting and developing its brand within the portable consumer projector market without the use of false advertising. iRULU, on the other hand, has been proven to make wildly false claims about its products' lumens in an effort to increase its sales. iRULU has no equitable interest in perpetuating false claims regarding material characteristics of its products. *See PBM Prod.*, 639 F. 3d at 127. Even if the harm to iRULU in ceasing their unlawful conduct were relevant (it is not),[3] the injunction here would not cause iRULU any *undue* harm. In falsely advertising its products, iRULU is solely responsible for any harm that may result from an injunction that calls for iRULU to stop deceiving the consuming public. Further, whatever the costs of an injunction, iRULU is "largely to blame for those costs." *Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 414 (S.D.N.Y. 2011), *aff'd*, 462 F. App'x 31 (2d Cir. 2012) (granting preliminary injunction

---

[3] As the Fourth Circuit has recognized, the previous "balance-of-hardship test" for preliminary relief "may no longer be applied in granting or denying preliminary injunctions in the Fourth Circuit," because that test was "in fatal tension" with more recent Supreme Court authority. *Real Truth About Obama v. F.E.C.*, 575 F.3d 342, 346 (4th Cir. 2009), *reissued on remand*, 607 F.3d 355, 355 (4th Cir. 2010) (per curiam) (discussing *Winter*, 555 U.S. 7).

in action under the Lanham Act). Thus, the equities strongly tip in favor of granting an injunction.

## IV. THE PUBLIC INTEREST WOULD BE ENHANCED BY A PRELIMINARY INJUNCTION

Fourth Circuit case law makes clear that there is a strong public interest in ridding the marketplace of false advertising. "[I]t is self evident that preventing false or misleading advertising is in the public interest in general." *PBM Prod.,* 639 F. 3d at 127 (citations omitted); *Scotts*, 315 F.3d at 286 (same); *Choice Hotels Int'l, Inc. v. Zeal, LLC*, No. 13-1961, 2015 WL 5781507, at *13 (D.S.C. Sept. 29, 2015) (same).

There is no question that false advertising is likely to deceive the consuming public. Where, as here, the defendant makes literally false representations, the consuming public *is* deceived. iRULU's false statements have led consumers to believe that they can purchase a projector with a certain brightness rating for a fraction of the cost of a competing projector. *See* Compl. ¶¶ 24-25 & Compl., Ex. 1. The public interest is best served by ensuring manufacturers accurately represent their products. Accordingly, the Court should enjoin iRULU from making further false statements and further order that iRULU provide the consuming public with accurate information.

## V. THE COURT SHOULD REQUIRE iRULU TO ISSUE CORRECTIVE NOTICES

Courts may additionally require a defendant to issue corrective notices and place advertising as necessary to cure the misperception in the marketplace that its false statements created. *See, e.g., Linotype Co. v. Varityper, Inc.*, 1989 WL 94338 (S.D.N.Y. Aug. 4, 1989) (requiring corrective advertising in preliminary injunction on false advertising claim). iRULU should be required to do so here, both to remedy the confusion that it has undoubtedly caused in the marketplace, and to ensure that iRULU does not take further advantage of its false

statements. The Court therefore should order iRULU to send corrective notices to retailers and customers explaining the nature of iRULU's actions and the substance of the Court's injunction.

## RELIEF REQUESTED

For these reasons, Epson respectfully requests that its Motion for Preliminary Injunction and Recall Order should be granted: (1) prohibiting iRULU from engaging in further false or misleading advertising with respect to its products' lumen capacities; (2) ordering removal of all infringing iRULU products from Amazon and other webpages until such a time as iRULU can substantiate its new proposed lumen claims through appropriate testing; and (3) ordering iRULU to send corrective notice to its retailers and customers disclosing that it made literally false claims regarding its products' lumen capacity.

Charleston, South Carolina
Dated:  January 19, 2017

/s/ Jeffrey Patterson
Jeffrey Patterson.
E-Mail:  jeff.patterson@klgates.com
K&L GATES LLP
134 Meeting Street, Suite 200
Charleston, SC 29401
Telephone: 843.579.5600
Facsimile: 843.579.5601

Morgan T. Nickerson
E-Mail:  morgan.nickerson@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone:  617.261.3100
Facsimile:  617.261.3175

*To Be Admitted Pro Hac Vice*

ATTORNEYS FOR PLAINTIFF EPSON AMERICA, INC.